UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHEL DENISE REID,

            Plaintiff,                      Case No. 2:14-cv-11455
                                            Judge Stephen J. Murphy, III
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

**RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DE 16) AND TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DE 20)**

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the

Commissioner's decision.

**II.**     **REPORT**

      Plaintiff, Rachel Denise Reid, brings this action under 42 U.S.C. §§ 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income (SSI)

and disability insurance benefits (DIB).  This matter is before the United States

1

Magistrate Judge[1] for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 16), the Commissioner's cross motion for summary judgment (DE 20), and the administrative record (DE 12).

## A.    Background[2]

Plaintiff filed her applications for SSI and DIB on December 2, 2010, alleging that she has been disabled since May 12, 2009, when she was 41 years old.  (R. at 223-228, 229-232.)  Plaintiff alleges disability as a result of a heart condition, diabetes and back problems.  (R. at 250-259, 251.)  Plaintiff's applications were denied during April 5, 2011.  (*See* R. at 126-129 (SSI); R. at 113, 114-125 (DIB).)

On July 18, 2011, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  R at 132-134.  ALJ David F. Neumann held a hearing on October 10, 2012, at which Plaintiff was represented by counsel and Vocational Expert (VE) Lawrence Zatkin testified.  (R. at 39-80.)  On November 30, 2012, ALJ Neumann determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 24-38.)

---

[1] This case was originally assigned to Judge Murphy and Magistrate Judge Binder. On April 24, 2014, it was reassigned from Magistrate Judge Binder to Magistrate Judge Morris.  Then, on January 13, 2015, the case was reassigned from Magistrate Judge Morris to the Undersigned.

[2] Plaintiff previously sought benefits.  ALJ James P. Alderisio conducted a hearing on January 13, 2009, at which Plaintiff and a VE appeared (R at 81-98).  On May 13, 2009, ALJ Alderisio rendered his decision (R at 99-109).  Then, on October 1, 2009, the Appeals Council denied Plaintiff's request for review (R at 110-112).

On December 10, 2012, Plaintiff requested review of the hearing decision.
(R. at 22-23.)  On February 18, 2014, the Appeals Council denied Plaintiff's
request for review.  (R. at 1-4.)  Thus, ALJ Neumann's decision became the
Commissioner's final decision.

Plaintiff then timely commenced the instant action on April 10, 2014.  (DE
1.)

**B.     Plaintiff's Medical History**

In this case, Plaintiff alleges that she has been disabled since May 12, 2009.
(*See* R. at 223-228, 229-232.)  Plaintiff's medical records span the period from
March 25, 2005 to August 13, 2012.  (R. at 302-627 (Exhibits 1F-12F).)  Among
those the ALJ cited are:

- September 15, 2010 notes of Rhona A. Fingal, M.D. (R at 378-380)
- October 29, 2010 notes of Dr. Fingal (R at 376-377)[3]
- November 18, 2010 MRI of the pelvis (R at 364, 476-477)
- December 3, 2010 notes of Dr. Fingal (R at 373-374)
- January 4, 2011 notes of Dr. Fingal (R at 370)[4]
- September 13, 2011 notes of Rhoda Astronomo, P.T., D.P.T. (R at 582-584)[5]

_____

[3] The ALJ's decision actually refers to an October 09, 2010 report in Exhibit 5F (R at 369-497).  R at 32.  However, the Court assumes the ALJ is referring to Dr. Fingal's October 29, 2010 notes within that same exhibit.  *See* R at 376-377.

[4] The ALJ's decision actually refers to a January 2011 report in Exhibit 11F (R at 559-589).  R at 32.  However, the Court assumes the ALJ is referring to Dr. Fingal's January 4, 2011 notes in Exhibit 5F (R at 369-497).

[5] The ALJ's decision actually refers to an August 2011 report in Ex. 11F (R at 559-589), which could be the August 18, 2011 notes of Dr. Fingal (R at 570-572).  However, the Court assumes the ALJ is referring to the September 13, 2011 notes

- May 30, 2012 notes of Dr. Fingal (R at 562-564)
- July 13, 2012 cardiovascular evaluation by Young Ho Sohn, M.D. (R at 528)
- August 7, 2012 notes of Dr. Fingal (R at 560-561)

(R. at 32-33.)  These records will be discussed in detail as required below.

### C.   Hearing Testimony (October 10, 2012)

#### 1.   Plaintiff's Testimony

Plaintiff testified at the October 10, 2012 hearing that she experiences pain in both of her hands.  (R. at 49.)  Plaintiff further testified that she cannot feel things with her fingertips; they are numb.  (R. at 65.)  Hand braces did not help the problems with her hands when styling hair.  (R. at 66-67.)  After following up with her doctor, she was told she would have to have surgery; she could not get injections in her hands.  She needs to obtain clearance from her cardiologist before having the surgery, as she apparently had heart stents placed back in 1999.  (R. at 49, 67.)  Her hands get worse with use.  (R. at 67-68.)  She has problems with carpal tunnel syndrome.  (R. at 68.)

Plaintiff also testified that she experiences pain in her back, straight down her back through her legs.  (R. at 49; *see also* R. at 68.)  She reports pain and numbness in her legs. (R. at 49.)  She additionally noted that, since her January 13, 2009 hearing, she has had more problems with sleep apnea.  (R. at 68.)  She has diabetes and has been diagnosed with depression and bipolar disorder.  (R. at 52,

of physical therapist Astronomo (R at 582-584), because these notes are consistent with the data quoted by the ALJ (R at 32).

69.) She reports that she loses her composure or breaks down daily.  (R. at 70.)

She is tired a lot and sleeps a lot, with various medications making her "drowsy, tired, sleepy."  (R. at 49.)

Additionally, she described her daily activities and past work activity. These and other more specific details relating to her physical condition will be discussed as needed below.

### 2.    Vocational Expert Testimony

Vocational Expert (VE) Lawrence Zatkins also testified.  (R. at 72-79.)  The VE's vocational analysis as to Plaintiff's past work as a cashier and hairdresser, each of which was assessed a light exertional level (R. at 301), had been admitted into the record.  (R. at 73.)  In all, the ALJ posed three hypotheticals.  (R. at 73-74, 77, 78.)  Within his testimony, the VE discussed the sedentary, unskilled service occupations of telephone quote clerk, sorter, charge account clerk and surveillance monitor.  (R. at 74-78.)

### D.    The Administrative Decision[6]

---

[6] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?

ALJ Neumann rendered his decision on November 30, 2012.  (R. at 24-38.)

At Step 1, the ALJ determined that Plaintiff had engaged in work activity since

November 9, 2010, the date of her application;[7] however, the ALJ did not find it

necessary to determine if the work was substantial or not because he found other

reasons to deny the claim at subsequent steps in the process.  (R. at 29.)

At Step 2, the ALJ found that Plaintiff had the disorders of carpal tunnel

syndrome, diabetes, mild left ventricular dysfunction, sleep apnea, obesity,

degenerative disc disease of the lumbar spine and depression.  The ALJ further

stated that Plaintiff's condition produces limitations which meet the definition of

"severe."  (R. at 29.)

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals the severity of one of

the listed impairments.  (R. at 30-31.)

---

3.     Do the claimant's severe impairments, alone or in combination, meet
or equal the criteria of an impairment set forth in the Commissioner's Listing of
Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the
claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and
residual functional capacity, can the claimant perform other work available in the
national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[7] As noted above, Plaintiff's applications are dated December 2, 2010.  (R. at 223,
229.)

At Step 4, the ALJ determined that Plaintiff had the RFC to perform light work, except that she is limited to:

- simple, routine, repetitive work;
- lifting no more than 15 pounds occasionally and 10 pounds frequently;
- standing/walking no more than 1 hour in an 8 hour workday;
- sitting for no more than 7 hours in an 8 hour workday;
- occasionally climbing ramps, stairs, balancing, stooping, kneeling, crouching or crawling;
- avoiding unprotected heights, moving machinery and vibrations;
- avoiding climbing ropes, ladders and scaffolds;
- no constant grasping, gripping, pinching, pulling, squeezing or twisting with the hands;
- use of a cane for ambulation, but the contralateral upper extremity could be used to lift and carry up to the exertional limits; and
- no more than occasional contact with supervisors, coworkers and the public.

(R. at 31-33.)  The ALJ further concluded that Plaintiff is unable to perform any past relevant work.  (R. at 33.)

At Step 5, having taken into consideration the Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 34.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

8

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"   *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.    Analysis

In her motion for summary judgment, Plaintiff presents two issues as the

basis for her appeal.  First, she argues that the ALJ made impermissible credibility

findings by not giving proper weight to her objectively supported complaints of

pain.  Second, she argues that the RFC determination was improper in light of her

multiple medical conditions, limitations and the effects of her prescribed

medications. (DE 16 at 3, 19, 22.)[8]  In the end, Plaintiff contends that there is clear,

---

[8] In her *introduction* to her argument, she gives a lengthy explanation of the
standard of review, including a tutorial on the treating physician rule, identifying
several other ways in which she claimed the ALJ erred, including: the ALJ's
failure to (a) "consider the objective medical evidence and treating physician
opinions as to the severity of Reid's medical conditions," (b) "consider the
combined effect of all of Ms. Reid's impairments," and (c) "follow the treating
physician rule regarding Reid's [RFC][,] including the failure to present an
accurate depiction to the [VE]."  DE 16 at 17-18.  But she does not develop these
points, or the alleged failure to follow the treating physician rule further, instead
reverting to the two distinct issues identified at the very beginning of her brief and
in the topic headings to her arguments.  Specifically, she fails to identify which
records or opinions of her treating physician (Dr. Fingal) the ALJ failed to properly

objective evidence which clearly supports disability.  She argues that a rehearing would unnecessarily delay her case, and so this Court should decide it in her favor at this juncture, in lieu of ordering a benefit-delaying remand.  DE 16 at 25.

The Commissioner opposes Plaintiff's motion, asserting that (A) the ALJ properly exercised his discretion in assessing Plaintiff's credibility and (B) substantial evidence supports the ALJ's RFC assessment.  DE 20 at 9-12, 12-15.

The Undersigned will address each argument raised in turn.

### 1. The ALJ properly considered the objective medical evidence when assessing Plaintiff's credibility.

Plaintiff contends that the ALJ did not consider the objective medical evidence as to the severity of Plaintiff's medical conditions.  (DE 16 at 17.) Plaintiff contends that if her testimony were given credibility, the VE's testimony "clearly supports a finding of disability at step five of the sequential analysis." (DE 16 at 21.)  In other words, Plaintiff contends, the ALJ made impermissible credibility findings and did not give proper weight to Plaintiff's objectively supported complaints of pain.  (DE 16 at 19-22.)

---

accredit.  In any case, the ALJ expressly considered at least four, if not six, of Dr. Fingal's notes.  R at 32-33, and it is not the Court's role to develop this argument for her. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Dillery v. City of Sandusky,* 398 F.3d 562, 569 (6th Cir.2005) (internal quotation marks and citations omitted); *see also Bishop v. Gosiger, Inc.,* 692 F.Supp.2d 762, 774 (E.D.Mich.2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones."(internal quotation marks and citations omitted)).

The Code of Federal Regulations provides guidance as to as to how the

Social Security Administration evaluates symptoms, including pain. *See* 20 C.F.R.

§ 404.1529, 20 C.F.R. § 416.929.  In relevant part, these regulations provide: "In

determining whether you are disabled, we consider all your symptoms, including

pain, and the extent to which your symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence."  20 C.F.R. §

404.1529(a), 20 C.F.R. § 416.929(a).  The regulations regarding evidence provide

that objective medical evidence includes "medical signs and laboratory findings as

defined in § 404.1528(b) and (c)[.]"  20 C.F.R. § 404.1512(b)(1)(i), 20 C.F.R. §

416.912(b)(1)(i).  Moreover, the social security ruling (SSR) which addresses

assessing the credibility of an individual's statements provides:

> It is not sufficient for the adjudicator to make a single, conclusory
> statement that "the individual's allegations have been considered" or
> that "the allegations are (or are not) credible." It is also not enough for
> the adjudicator simply to recite the factors that are described in the
> regulations for evaluating symptoms. The determination or decision
> must contain specific reasons for the finding on credibility, supported
> by the evidence in the case record, and must be sufficiently specific to
> make clear to the individual and to any subsequent reviewers the
> weight the adjudicator gave to the individual's statements and the
> reasons for that weight.

SSR 96-7p, 1996 WL 374186, 1-2 (July 2, 1996).

Specifically as to objective medical evidence, Plaintiff contends that her

testimony about severe limitations relating to the use of her hands, the pain in her

back and hips, and fatigue and sleepiness is supported by: an October 26, 2011

11

electromyography (EMG), which showed bilateral carpel tunnel syndrome (R. at 578-579); an August 2, 2011 electroencephalogram (EEG), which discussed the effects upon Plaintiff's severe obstructive sleep apnea (R. at 501-502); and a November 18, 2010 magnetic resonance imaging (MRI), which revealed "missed signal intensity lesion seen in the right sacrum . . ." (R. 364, 476-477). (*See* DE 16 at 8, 9, 11, 16, 21.)[9]

Here, the Court should conclude that the ALJ properly considered the objective medical evidence when assessing Plaintiff's credibility. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id*.

To begin, in his Step 4 analysis, the ALJ represents that he complied with SSR 96-7p and states: "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged

_____

[9] The Court also notes that, *within the medical history portion of her brief*, Plaintiff contends that "[t]he records from recurrent glucose testing and blood screens support Ms. Reid's contention of a decrease in activities of daily living and increased symptomology due to diabetes during the period of time claimed at the hearing." (DE 16 at 8.) Also, Plaintiff mentions three computed tomography (CT) scans of the pelvis and/or abdomen. (*See* DE 16 at 8, 9, 10; R at 365 (December 15, 2010)); (R. at 586 (June 7, 2011)), (R at 516 (January 21, 2012).) However, she does not explain in her argument how these conditions impaired her ability to work or should have led to a finding of disability.

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  (R. at 31-32.)

Then, among other considerations, the ALJ expressly considered the November 18, 2010 MRI, which revealed a triangular lesion in the right sacrum (R. at 364, 476-477) that has, apparently, since been deemed benign (R. at 585). The ALJ concluded that these reports "provide support for the assigned RFC which allow the claimant to lift and carry 15 pounds, perform simple routine work and stand and walk up to 1 hour in an 8 hour work day and sit up to 7 hours in an 8 hour work day."  (R. at 32.)  Also, the ALJ expressly considered the July 13, 2012 cardiovascular evaluation by Dr. Sohn, which noted there was no evidence of shortness of breath, dizziness, headache, syncope or blurred vision (R. at 528). The ALJ concluded that this report impressed upon him "that the claimant's previous stents and cardiac treatment[] controlled her cardiovascular system and additional limitations are not justified."  (*See* R. at 32.)

Moreover, the ALJ referred to the May 30, 2012 report of Dr. Fingal, Plaintiff's *treating physician*, which noted that Plaintiff "states that she ate something wrong for lunch [which is] why her blood sugars are elevated.  She admits to not using the [CPAP] machine."  (R. at 563.)  Then, the ALJ noted that Plaintiff's "lack of compliance leaves the strong impression with the undersigned

that her conditions could be improved if she were to follow medications prescribed and modalities prescribed."  (R. at 32.) Noncompliance is a sufficient reason to discount credibility. *See Sias v. Sec'y of Health & Hum. Servs.*, 861 F. 2d 475, 480 (6th Cir. 1988) (concluding that the ALJ properly discounted the claimant's credibility where he failed to follow prescribed treatment); S.S.R. 96-7p, 1996 WL 374186, at *8 (noting that "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").  Likewise, I note that non-compliance may lead to the inference that the claimed condition is not as severe as it has been depicted by the claimant. *Brown v. Chater,* 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and a lack of significant medical restrictions is inconsistent with complaints of disabling pain).

Additionally, to the extent Plaintiff is arguing that the ALJ did not consider the October 26, 2011 EMG (*see* DE 16 at 21), this cumulative evidence did not need to be explicitly discussed, since the ALJ apparently accredited Plaintiff's own testimony regarding her hands (R. at 49, 65-68), such that the ALJ's hypothetical to the VE contained a limitation of no "twisting with the hands."  (R. at 74.)  Then, as noted above, the ALJ's Step 4 RFC determination included a limitation of "no constant grasping, gripping, pinching, pulling, squeezing or twisting with the

hands[.]"  (R. at 31.)  Also, even if he did not make specific mention of the August

2, 2011 EEG (DE 16 at 21), the ALJ took into consideration sleep apnea when, at

Step 2, he deemed it one of Plaintiff's disorders.  (R. at 29.)  In any case, while

possibly supporting her claim that she *has* carpal tunnel syndrome and sleep apnea

– both of which are acknowledged as impairments in the ALJ's opinion (R. at 29)–

neither of these two pieces of objective medical evidence has been shown to

establish their severity, or more importantly, how they limit her ability to work,

beyond the limitations already contained in the RFC.

Furthermore, "'[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.

Nor must an ALJ make explicit credibility findings as to each bit of conflicting

testimony, so long as his factual findings as a whole show that he implicitly

resolved such conflicts.'"  *Kornecky v. Commissioner of Social Security*, 167

F.App'x 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems–Akron v.

N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks

omitted)).

Finally, the ALJ noted that, "The fact that the claimant continues to perform

a wide variety of activities leaves the strong impression that her condition is fairly

well controlled and would also allow her to perform activities involved with

performing simple, unskilled work tasks." (R. at 32.) These activities, which are

15

discussed in greater detail below with respect to the RFC, could also undermine the veracity of Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms."  (R. at 31-32;) *see also*, *Brooks v. Social Sec. Admin.*, 430 F.App'x 468, 483 (6th Cir. 2011) ("The ALJ may consider a claimant's daily activities in determining the credibility of her complaints of pain."), 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Thus, the Court should conclude that the ALJ properly considered the objective medical evidence when assessing Plaintiff's credibility.

## 2.   Plaintiff has not demonstrated that the ALJ omitted any significant physical or mental limitations from her residual functional capacity (RFC) finding.

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(3), 416.927(e).  "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment ***must*** include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing *specific* medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. ***The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.***

S.S.R. 96-8p, 1996 WL 374184, at *6-7 (July 2, 1996) (emphasis added).

Plaintiff argues that the ALJ failed to consider the combined effect of Plaintiff's impairments. (DE 16 at 17.) In other words, Plaintiff argues, "the RFC determination [was not] proper given the multiple medical conditions limitations and the effects of prescribed medications[.]" (DE 16 at 22-24.)

### a.    Depression and bipolar disorder

Plaintiff's medical records indicate a January 8, 2010 diagnosis of "Major depression, single episode, moderately severe" by Abdallah Elias Zamaria, M.D. of St. John Hospital & Medical Center (R. at 357.) Plaintiff's medical records also include treatment records from Northeast Guidance Center, dating from April 8, 2011 to August 13, 2012 (R. at 590-627 (Ex. 12F)). A January 9, 2012 psycho-social assessment indicates Plaintiff is a danger to herself, and she sometimes talks to her deceased brother. (R. at 614, 618.) Plaintiff was diagnosed with depressive disorder, major depressive disorder and bereavement, and the diagnostic summary

17

indicates, among other things, that Plaintiff has depressed feelings daily, early/middle insomnia, frequent tearfulness, anhedonia and lethargy. (R. at 619.) On January 11, 2012, Plaintiff sought help for depression and grief. (R. at 624.) The next day, she was put on Paxil, after indicating passing thoughts of suicidal ideation, but no plans or attempts. (R. at 605.)   At her April 30, 2012 psychiatric evaluation, Plaintiff complained of "Depression, crying spells[,] mood swings, anger, gets mad, & distu[r]bed sleep[.]" (R. at 599.) At that visit, Govindan Sadasivan, M.D. diagnosed her with bipolar I disorder, "most recent episode mixed, unspec[ified/ific]". (R. at 602.) Subsequently, on August 7, 2012, Plaintiff apparently reported to her treating physician that she was on Paxil and "as of 3/2012 doing better." (R. at 560.)

At the hearing, the ALJ acknowledged that Plaintiff had been treated for major depression. (R. at 49.) Plaintiff specifically testified that she had been treating with a psychiatrist at Northeast Psychiatrist Center, and it was Plaintiff's understanding, from what she had been told, that she had depression and bipolar disorder. (R. at 69.) She also testified that she loses composure or breaks down daily. (R. at 70.) However, when asked to state in her own words what limitations she has that keep her from working, she responded, "Standing too long, sitting too long[,]" without mention of her mental impairments. (R. at 48-49.)

Thereafter, the ALJ concluded at Step 2 that Plaintiff had several disorders, including depression.  (R. at 29.)  At  Step 3 he provided a fairly extensive analysis of her claimed mental impairments, noting that she only has "mild difficulties" in social functioning and with concentration, persistence or pace, "no episodes of decomposition, which have been of extended duration[,]" and "does not have a medically documented history of a chronic affective disorder of at least 2 years' duration . . . ." (R. at 30.) The ALJ again mentioned Plaintiff's depression in his Step 4 RFC determination, when he cited Dr. Fingal's August 7, 2012 notes that Plaintiff's depression was doing better.   (R. at 32, 560.)

In sum, the ALJ discussed Plaintiff's psychiatric treatment with her at the hearing, and he addressed her depression at Step 2 and Step 4.  To be sure, Plaintiff argues that the ALJ did not discuss Plaintiff's psychiatric treatment and that "Judge Neumann never gave the psychiatric condition proper consideration when formulating the capacity to maintain competitive employment."  (DE 16 at 21, 24.) However, at Step 3, the ALJ concluded that the following RFC assessment reflected the degree of limitation he had found in the 'paragraph B' mental function analysis.  (R. at 30.)  Thus, the ALJ gave adequate consideration to Plaintiff's psychiatric treatment.

Furthermore, in support of her claim of bipolar disorder, Plaintiff vaguely references a single notation in the 627-page record (DE 16 at 11, R. at 602), but

this reference within the medical history portion of her brief points to no additional behaviors or limitations which can be specifically attributed to her bipolar disorder diagnosis beyond those already considered by the ALJ with respect to her depression.[10]   Nor does this portion of her motion point to any testimony or objective medical evidence which links her bipolar disorder with an inability to work.  Plaintiff has therefore not met her burden to prove the existence of a disability related to bipolar disorder.  *See Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### b.   Medication & side effects

Plaintiff's medical records evidence several prescriptions.  For example, according to a January 9, 2012 psycho-social assessment, Plaintiff's medications included:  nitroglycerin, metformin, hydralazine, simvastin, metroprolol, aspirin, metrolazine, enalapril malteate, KCl, loratadine, spironolactone, cyclobenzaprine, lantus, vitoza, Ventolin (albuterol inhaler) and hydrocodone.  (R. at 612-622, 616.)  On January 12, 2012, Plaintiff was prescribed Paxil.  (R. at 605.)

During the hearing, Plaintiff testified that she uses Metformin, insulin and Vicodin. (R. at 52, 71; *see also* R. at 327.)  Plaintiff testified that her medication makes her drowsy, sleepy and causes mood swings.  (R. at 58; *see also* R. at 68.)

---

[10] This page in the record also notes alcohol abuse as a primary description within Axis I. R. at 602.

She also testified that she had been prescribed psychiatric medication.  (R. at 69-70.)

Here, Plaintiff contends that the ALJ did not discuss the side effects of Plaintiff's medications, such as narcotic pain medications, insulin, psychiatric medication, nitroglycerin and muscle relaxers.  (DE 16 at 21.)  In other words, Plaintiff contends, "Judge Neumann's decision improperly minimized the psychiatric conditions and effectively ignored the effects of the multiple medications."  (DE 16 at 24; *see also*, 20 C.F.R. §§ 404.1529(c)(iv), 416.929(c)(iv).)

However, even if the ALJ's decision did not discuss drowsiness, sleepiness and/or mood swings caused by her medication, Plaintiff's function report admits, in what is apparently her own handwriting, that she can stand/walk for "about 2 hours" and sit for "about 6 hours" and walk "about ½ mile" before needing to rest.  (R. at 277), numbers which support the ALJ's RFC of standing/walking no more than 1 hours and sitting no more than 7 hours (R. at 31).  She testified that she can lift and carry "[m]aybe bout(sic?) five, ten pounds."  (R. at 64-65.)  Her function report seems to indicate she can occasionally lift 10 pounds. (R. at 277.)  The ALJ's RFC concluded that Plaintiff was limited to "lifting no more than 15 pounds occasionally and 10 pounds frequently[.]"  (R. at 31.)  These limitations were explained after reviewing specific reports.  (*See* R. at 32.)  Moreover, Plaintiff

21

testified that she was styling hair on and off from April or May of 2010 to November 11, 2011 for "[m]aybe about six to eight" hours per day, three to five days per week. (R. at 56-57.) This involved having her "[s]tand and sitting, whichever was comfortable" and using her hands to braid and do ponytails, and extensions, manipulating the hair with her fingers. (R. at -55, 57.)[11] It is important to note that all of this work activity took place during the alleged period of disability, the application having been filed on December 2, 2010. (R. at 223, 229.)

"An ALJ need not discuss every piece of evidence in the record for his [or her] decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 6661, 665 (6th Cir. 2004). Instead, the ruling must "clearly articulate the rationale underlying the decision" in order to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, 173 F.3d 428, at *3 (6th Cir. 1999). To be sure, Plaintiff seems to allege that the ALJ did not comply with 20 C.F.R. § 416.929(c) in his treatment of Plaintiff's side effects. (DE 16 at 24.) However, the ALJ's opinion as written provides a clearly articulated rationale for his decision, which is supported by substantial evidence. Accordingly, Plaintiff's argument on this point is unpersuasive.

### c.       Concentration, persistence, and pace

---

[11] Plaintiff last worked right after doing her EMG, which occurred on October 26, 2011. R at 54, 578-579.

At Step 3, the ALJ stated:  "In social functioning, and with concentration, persistence or pace[,] the claimant has *mild difficulties*."  (R. at 30 (emphasis added).)  It is Plaintiff's position that "[t]he amount and extent of medication clearly supports a higher level of impairment concerning attention, concentration and pace."  (DE 16 at 21.)  Yet she gives no citation to the record or to the law which would compel such a conclusion here.

However, as the Commissioner points out, the ALJ's Step 4 RFC determination was limited to simple, routine, repetitive work.  (R. at 31, DE 20 at 14.)  Moreover, from a social perspective, the Court notes that the RFC includes a limitation of "no more than occasional contact with supervisors, coworkers and the public."  (R. at 31.)  In addition, Plaintiff's function report indicates that she is able to pay bills, count change, handle a savings account and use a checkbook or money orders.  (R. at 275.)  The function report further indicates that, while Plaintiff does not handle stress well, she follows written and spoken instructions well, handles changes in routine well, and gets along well with authority figures.  (R. at 277-278.)  In addition, as mentioned above, she testified about styling hair for six to eight hours in a day.  (*See* R. at 54-57.)  She is also able to do crossword puzzles. (R. at 63.)  It is not this Court's role to second-guess the ALJ's conclusion from all of this information that Plaintiff suffers from only mild deficits in concentration,

persistence and pace where, as here, his opinion is supported by substantial evidence in the record.

### d.    Daily activities

At Step 3, the ALJ stated:  "In activities of daily living, the claimant has *mild to moderate restriction*."  (R. at 30 (emphasis added).)  The ALJ also mentioned activities of daily living within his Step 4 RFC determination.  After referring to the September 13, 2011 notes of physical therapist Rhoda Astronomo (R. at 582-584),[12] the ALJ stated:  "The fact that the claimant continues to perform a wide variety of activities leaves the strong impression that her condition is fairly well controlled and would also allow her to perform activities involved with performing simple, unskilled work tasks."  (R. at 32.)

Within her argument, Plaintiff points to her testimony about using a cane, limitations on standing, not doing laundry, but washing dishes by hand, needing breaks when vacuuming, sweeping or mopping, and limitations on doing things with her grandchildren.  (*See* DE 16 at 21; R. at 47-48, 64, 59, 60, 62.) Referencing 20 C.F.R. § 416.929(c), Plaintiff claims that daily activities were not considered.  DE 16 at 24; *see also* 20 C.F.R. § 416.929(c)(3)(i), 20 C.F.R. § 404.1529(c)(3)(i).

---

[12] These notes describe the limitations on Plaintiff's activities of daily living (ADLs) as difficulty with sitting for prolonged period of time; walking more than 100 feet; lifting; performing house chores; community and social recreation; performing self-care, grooming and ADLs; and sleeping at night.  (R. at 582.)

However, Plaintiff's daily activities were discussed at Step 4. As noted above, daily activities were discussed with respect to the physical therapy notes. (R. at 32.) Moreover, the ALJ's decision referred to Plaintiff's testimony, expressly noting that Plaintiff styled hair for 6 to 8 hours per day, 3 to 5 days per week from April or May of 2010 to November 11, 2011, goes to church every Sunday, is able to vacuum, sweep and mop for five or ten minutes before having to take a break, will use the home computer for an hour or two while sitting, and tries to do things sitting with her granddaughter. (*See* R. at 33, R. at 55, 56-57, 61, 60, 63, 64.)

Moreover, Plaintiff's function report indicates that: she has no problem with personal care (R. at 273); she shops every month with her daughter; when she needs to sit down because she can no longer walk, her daughter does the rest (R. at 275); she reads each day, looks at television about 4 hours a day, gets on the computer when she can, and goes to church (R. at 276); she can stand/walk about 2 hours, sit about 6 hours and occasionally lift 10 pounds (R. at 277); and, although she does not handle stress well, she does well with following instructions and handling changes in routine (R. at 277-278).

> **e.   Plaintiff has not shown an error in the functional limitations of the first hypothetical posed to the VE.**

As noted above, the VE testified regarding the sedentary, unskilled service occupations. (R. at 74-78.) Then, at Step 5, the ALJ determined that, considering

25

Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform – namely, telephone quote clerk, sorter, charge account clerk and surveillance monitor occupations.  (R. at 34.)

Here, Plaintiff contends that the ALJ did not pose an accurate depiction to the VE.  DE 16 at 17.  Among other things, Plaintiff contends that, "Judge Neumann improperly relied on [VE] testimony which did not incorporate his own findings relating to *functional limitations*[;]" and "[r]estrictions relating to *fatigue and effects of medication* were not included in the hypothetical that was utilized to preclude benefits at step five of the sequential analysis."  DE 16 at 22 (emphasis added). Ultimately, Plaintiff takes the position that the Commissioner has not met the Step 5 burden.  (DE 16 at 24.)

Plaintiff's challenges to fatigue and medication side effects are addressed above as challenges to the ALJ's Step 4 RFC determination.  Plaintiff's challenges to the functional limitations can be likewise addressed.  To be sure, Plaintiff testified that standing too long and sitting too long were limitations that keep her from working.  (R. at 48-49.)  Also, as Plaintiff points out, *the third* hypothetical posed by the ALJ included sitting for two hours, standing for one hour and walking for one hour in an eight-hour work day; the VE testified such limitations would be

26

"less than full sedentary employment.  I mean, the reality is that those jobs would be more preclusive[.]"  (R. at 78, DE 16 at 21-22.)

However, Plaintiff has not successfully challenged the ALJ's RFC determination, which provided for "standing/walking no more than 1 hour in an 8 hour workday[,]" and "sitting for no more than 7 hours in an 8 hour workday[.]" (R. at 31.)  These were the relative limitations posed in *the first* hypothetical, in response to which the VE testified about the availability of telephone quote clerk, sorter, charge account clerk and surveillance monitor occupations.  (*See* R. at 73-76.)  Moreover, Plaintiff testified that: when she was styling hair, she would stand or sit, whichever was comfortable (R. at 57); for the one and a half to two hours she is at church each Sunday, she sits and stands (R. at 61); and, she is sitting when she uses the computer (R. at 63).  In addition, Plaintiff testified that she can sit for about one hour, stand for about one half to one hour, and walk for about ten to fifteen minutes (R. at 64).  Thus, there is substantial evidence for the ALJ's functional limitations as to standing, walking, and sitting.  *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

### f.    Conclusion

It is the claimant's burden to prove her RFC.  *See* 20 C.F.R. § 416.912(a);[13] 20 C.F.R. § 404.1512(a); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Plaintiff has not satisfied his burden to challenge the ALJ's RFC finding.

Moreover, even if the ALJ omitted discussion of some items, Plaintiff has not shown the omission was harmful.  *See Shinseki, Secretary of Veterans Affairs v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

In the end, the ALJ's light work RFC finding included several limitations. R. at 31.  The ALJ discussed several pieces of medical evidence, after which he drew specific conclusions about Plaintiff's limitations.  R. at 32-33.  Thus, the ALJ's conclusion that Plaintiff has the RFC to perform light work, limited to simple, routine, repetitive work with the multiple aforementioned restrictions (R. at 31), is supported by substantial evidence in the record.

### G.   Summation

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

---

[13] "In general, you have to prove to us that you are blind or disabled."  20 C.F.R. 416.912(a).

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: July 27, 2015          s/Anthony P. Patti
                              Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on July 27, 2015, electronically and/or by U.S. Mail.

                              s/Michael Williams
                              Case Manager for the
                              Honorable Anthony P. Patti